IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANTONIO WILSON, | * | |
| Plaintiff, | * | |
| vs. | * | Civil Action No. ADC-17-2666 |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,[1] | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On September 11, 2017, Antonio Wilson ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny his claim for Supplemental Security Income ("SSI"). *See* ECF No. 1 ("the Complaint"). After consideration of the Complaint and the parties' cross-motions for summary judgment (ECF Nos. 13, 16), the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2016). In addition, for the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 13) and Defendant's Motion for Summary Judgment (ECF No. 16) are DENIED, the decision of the SSA is REVERSED IN PART, and the case is REMANDED to the SSA for further analysis in accordance with this opinion.

### PROCEDURAL HISTORY

On July 8, 2014, Plaintiff filed a Title XVI application for SSI, alleging disability beginning on April 28, 2009. His claim was denied initially and upon reconsideration on April

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner of Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

1

25 and July 22, 2015, respectively. Subsequently, on July 28, 2015, Plaintiff filed a written request for a hearing and, on November 29, 2016, an Administrative Law Judge ("ALJ") presided over a video hearing. On December 15, 2016, the ALJ rendered a decision ruling that Plaintiff "ha[d] not been under a disability, as defined in the Social Security Act [(the "Act")], since July 8, 2014,[2] the date the application was filed." ECF No. 10 at 35. Thereafter, Plaintiff filed an appeal of the ALJ's disability determination and, on July 24, 2017, the Appeals Council denied Plaintiff's request for review. Thus, the decision rendered by the ALJ became the final decision of the SSA. *See* 20 C.F.R. § 416.1481 (2018); *see also Sims v. Apfel*, 530 U.S. 103, 106–07 (2000).

On September 11, 2017, Plaintiff filed the Complaint in this Court seeking judicial review of the SSA's denial of his disability application. On February 8, 2018, Plaintiff filed a Motion for Summary Judgment, and after receiving an extension, Defendant filed a Motion for Summary Judgment on May 24, 2018.[3] This matter is now fully briefed and the Court has reviewed both parties' motions.

### STANDARD OF REVIEW

"This Court is authorized to review the [SSA]'s denial of benefits under 42 U.S.C.A. § 405(g)." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citation omitted). The Court, however, does not conduct a *de novo* review of the evidence. Instead, the Court's review of an SSA decision is deferential, as "[t]he findings of the [SSA] as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g); *see Smith v.*

---

[2] During the hearing, Plaintiff amended his alleged onset date to July 8, 2014. ECF No. 10 at 24.

[3] On July 10, 2018, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

2

*Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) ("We do not conduct a *de novo* review of the evidence, and the [SSA]'s finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence." (citations omitted)). Therefore, the issue before the reviewing court is not whether the plaintiff is disabled, but whether the ALJ's finding that the plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017) ("[A] reviewing court must uphold the [disability] determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." (citation and internal quotation marks omitted)).

"Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (internal citations and quotation marks omitted). "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal citations and quotation marks omitted). Therefore, in conducting the "substantial evidence" inquiry, the court shall determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for SSI, a claimant must establish that she is under disability within the meaning of the Act. The term "disability," for purposes of the Act, is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). A claimant shall be determined to be under disability where "[her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the SSA, follows the five-step evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). The evaluation process is sequential, meaning that "[i]f at any step a finding of disability or nondisability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments] that meets the

4

duration requirement[.]" 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirement of twelve months, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.909, 416.920(a)(4)(ii), 416.920(c).

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, then the claimant is considered disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's residual functional capacity ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. § 404.1520(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work.

20 C.F.R. § 404.1529(c)(1). At this second stage, the ALJ must consider all of the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 96-7p, 1996 WL 374186, at *1–9 (July 2, 1996). To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments she has received for her symptoms, medications, and any other factors contributing to functional limitations. *Id.*, at *5.

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e), 416.920(a)(4)(iv), 416.920(e).

Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. During steps one through four of the evaluation, the claimant has the burden of proof. 20 C.F.R. §§ 404.1520, 416.920; *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Radford*, 734 F.3d at 291. At step five, however, the burden of proof shifts to the ALJ to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC (as determined at step four), and; (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see Hancock*, 667 F.3d at 472–73; *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the claimant can perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R.

§§ 404.1520(a)(4)(v), 404.1520(g)(1), 404.1560(c), 416.920(a)(4)(v). If the claimant cannot perform other work, then the claimant is disabled. *Id.*

## ALJ DETERMINATION

In the instant matter, the ALJ performed the sequential evaluation and found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 8, 2014. ECF No. 10 at 26. At step two, the ALJ found that Plaintiff had the severe impairments of "obesity, degenerative joint disease of the right knee, right shoulder impairment, bladder/kidney stones, bipolar disorder, and post-traumatic stress disorder." *Id.* at 27. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* At step four, the ALJ determined that Plaintiff had the RFC:

> to perform sedentary work as defined in 20 CFR 416.967(a), except [Plaintiff] can lift and carry ten pounds; stand and walk for two out of eight hours; and sit for six out of eight hours. He can occasionally push or pull with the right upper extremity and the right lower extremity. [Plaintiff] can occasionally climb stairs, balance, stoop, and crouch, but cannot kneel, crawl, or climbing [sic] ladders. [Plaintiff] cannot have concentrated exposure to extreme cold, humidity, vibration, or respiratory irritants, and cannot have any exposure to hazards. [Plaintiff] is limited to simple, routine tasks and occasional contact with supervisors and coworkers, but cannot have any contact with the public. He cannot perform teamwork. [Plaintiff] is limited to low stress work, defined as occasional decisionmaking and occasional changes in work setting.

*Id.* at 29–30. The ALJ then determined that Plaintiff had no past relevant work. *Id.* at 34. Finally, at step five, the ALJ found that, "[c]onsidering [Plaintiff]'s age, education, work experience, and [RFC], there are other jobs that exist in significant numbers in the national economy that [Plaintiff] can also perform." *Id.* at 34. Thus, the ALJ concluded that Plaintiff

"ha[d] not been under a disability, as defined in the [Act], since July 8, 2014, the date the application was filed." *Id.* at 35.

## DISCUSSION

Plaintiff raises three allegations of error on appeal: the ALJ (1) failed to account for Plaintiff's moderate limitations in concentration, persistence, and pace in the RFC determination; (2) improperly rejected the medical opinions of Plaintiff's examining medical provider, Dr. Kenneth Fligsten; and (3) had no basis to determine that Plaintiff's condition had improved. The Court agrees with Plaintiff's first argument, but Plaintiff's second and third arguments lack merit. Each alleged error is addressed below.

### A. The ALJ's RFC Determination Improperly Accounted For Plaintiff's Moderate Difficulties With Concentration, Persistence, And Pace.

Plaintiff alleges that the ALJ erred by inadequately accounting for Plaintiff's "moderate difficulties" in concentration, persistence, or pace in violation of *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015) and requests a remand. Specifically, Plaintiff contends that the ALJ did not include a limitation to account for Plaintiff's moderate difficulties by merely limiting Plaintiff to "simple, routine tasks," "occasional contact with supervisors and co-workers," but not the public, no teamwork, and "low stress work defined as occasional decisionmaking and occasional changes in work setting." ECF No. 13-1 at 10 (citing ECF No. 10 at 30). The Court agrees.

In *Mascio*, the United States Court of Appeals for the Fourth Circuit determined that remand was appropriate for three distinct reasons, including the inadequacy of the ALJ's evaluation of "moderate difficulties" in concentration, persistence, or pace. 780 F.3d at 638. Specifically, the Fourth Circuit recognized a difference between the ability to perform simple tasks and the ability to stay on task, stating that the latter ability concerns the broad functional area of concentration, persistence, or pace. *Id.* Although the Fourth Circuit noted that the ALJ's

8

error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id.*; *see also Carr v. Colvin*, No. TMD 15-685, 2016 WL 4662341, at *10 (D.Md. Sept. 7, 2016) (remanding for the ALJ to "determine on a function-by-function basis how Plaintiff's impairments affect his ability to work for a full workday").

Here, the ALJ's RFC assessment did not properly account for Plaintiff's difficulties in concentration, persistence, or pace. At step three of the sequential evaluation, the ALJ determined that "[w]ith regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties," and further explained as follows:

> [Plaintiff] alleges difficulty with memory, concentration, comprehension, completing tasks, and following instructions. [Plaintiff] also testified to auditory hallucinations and seeing a "flash," all day, every day. However, treatment records from Robert Pascal Youth and Family Services regularly noted that [Plaintiff] showed "no apparent signs of hallucinations, delusions, bizarre behaviors, or other indicators of psychotic process." Furthermore, treatment records also routinely found "no signs of hyperactive or attentional difficulties." As such, I find that [Plaintiff] has only moderate difficulties in concentration, persistence, and pace.

ECF No. 10 at 28–29 (internal record citations omitted). The ALJ further discussed that Plaintiff's consultative psychiatrist found that Plaintiff had intact memory, a mental status report on May 25, 2016 stated that Plaintiff had no attention difficulties on May 25, 2016, and a mental status examination on August 3, 2016 "noted that though [Plaintiff] was depressed and appeared anxious, his affect was appropriate, his associations were logical and intact, his insight and judgment was fair, and he was cooperative and attention [sic] with no signs of of [sic] hyperactivity, attention difficulties, or behavioral abnormalities." *Id.* at 32–33 (record citations

9

omitted). The ALJ also considered the opinions of the State agency psychological consultants as well as Plaintiff's own testimony. *Id.* at 30, 33.

The ALJ then limited Plaintiff's RFC, in pertinent part, stating that Plaintiff "is limited to simple, routine tasks and occasional contact with supervisors and coworkers," but not with the public. *Id.* at 30. The ALJ also limited the RFC to state that Plaintiff cannot perform teamwork and "is limited to low stress work, defined as occasional decisionmaking and occasional changes in work setting." *Id.* The latter portion of this RFC finding imposes a restriction that corresponds with the ALJ's finding of moderate difficulties in social functioning, not concentration, persistence, or pace. *See Henry v. Berryhill*, No. BPG-17-57, 2018 WL 558839, at *3 (D.Md. Jan. 25, 2018). Thus, there is no restriction for the ALJ's finding of moderate difficulties in concentration, persistence, or pace. *See Bey v. Berryhill*, No. CBD-17-2292, 2018 WL 3416944, at *3–4 (D.Md. July 12, 2018) (determining that an RFC which limited the claimant "to simple, routine tasks and occasional contact with supervisors, coworkers, and the public" and "low stress work, defined as occasional decisionmaking [sic] and occasional changes in the work setting" failed to account for the claimant's moderate limitations in concentration, persistence, and pace (record citation omitted)); *Mims v. Berryhill*, No. TMD 16-2813, 2017 WL 3704615, at *7 (D.Md. Aug. 28, 2017) (determining that an "RFC assessment limiting Plaintiff to 'a low stress job defined as occasional interaction with the public, co-workers, or supervisors' d[id] not account for Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace" (internal record citation omitted)); *McDonald v. Comm'r, Soc. Sec. Admin.*, No. SAG-16-3041, 2017 WL 3037554, at *4 (D.Md. July 18, 2017) (concluding that "there [wa]s no corresponding restriction for the finding of moderate difficulties in concentration, persistence, or pace, such that it addresse[d the claimant]'s ability to sustain work throughout an eight-hour

workday" where "the ALJ imposed a RFC restriction that [the claimant could] perform 'simple, routine, and repetitive tasks involving only simple work-related decisions with few if any workplace changes and only occasional supervision'" (record citation omitted)). The ALJ noted Plaintiff's difficulties in this area in her opinion, explicitly acknowledged evidence that Plaintiff expressed difficulties maintaining concentration, persistence, or pace, and Plaintiff's attorney posed a hypothetical to the vocational expert inquiring about extreme limitations, including to Plaintiff's ability to maintain attention and concentration, but the ALJ failed to include any restrictions related to that limitation in the RFC assessment as well as an explanation why no such limitation was necessary. ECF No. 10 at 30, 69; *see also Martin v. Comm'r, Soc. Sec. Admin.*, No. SAG-15-335, 2015 WL 7295593, at *3 (D.Md. Nov. 18, 2015) (remanding case after ALJ discussed evidence pertaining to claimant's difficulties in concentration, persistence, or pace but then did not offer a restriction corresponding to the limitation nor did the ALJ justify the lack of restriction given).

"As the Fourth Circuit mandates under *Mascio*, 'once an ALJ had made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary.'" *Henry*, 2018 WL 558839, at *3 (citation omitted). "Without providing further analysis of plaintiff's mental limitations, highlighting medical evidence refuting the severity of the limitation, or otherwise discussing why a restriction pertaining to concentration, persistence, or pace is not needed in the case, this [C]ourt cannot perform an adequate review." *Id.* Because the ALJ neither included a proper limitation in her RFC assessment nor explained why such a limitation was unnecessary in this case, the Court must remand the case to the SSA for further analysis consistent with *Mascio*.

B. **The ALJ Properly Weighed The Testimony Of Plaintiff's Examining Physician In Making Her RFC Determination.**

Plaintiff contends that the ALJ erroneously afforded, without proper justification, partial weight to the opinion of Dr. Fligsten, an examining physician. ECF No. 13-1 at 11–12. Plaintiff is incorrect.

As this Court previously noted, "an ALJ need not parrot a single medical opinion, or even assign 'great weight' to any opinions, in determining an RFC assessment. Instead, an ALJ is required to consider 'all of the relevant medical and other evidence.'" *Jackson v. Comm'r, Soc. Sec.*, No. CCB-13-2086, 2014 WL 1669105, at *2 (D.Md. Apr. 24, 2014); *see also* 20 C.F.R. § 404.1545(a)(1) (ordering that an ALJ consider the entire record). Thus, an ALJ must consider, and may rely on, the opinions of non-treating medical sources, such as an examining physician or State agency consultant. *See* SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."). As is the case with the opinions of physicians and psychologists, the ALJ is required to weigh the opinions of non-treating sources and explain the reasons behind the weight given. *See* SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006). Furthermore, it is the duty of the ALJ to make findings of fact and resolve conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)).

When evaluating medical opinions, the ALJ should consider "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Dunn v. Colvin*, 607 F.App'x 264,

267 (4th Cir. 2015) (quoting *Johnson*, 434 F.3d at 654). "[A] non-examining physician's opinion cannot, by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted by *all of the other evidence* in the record." *Smith*, 795 F.2d at 345 (emphasis in original) (citation omitted). However, "the testimony of a non-examining physician can be relied upon when it is consistent with the record." *Id.* at 346 (citation omitted). "An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies' or has failed to give a sufficient reason for the weight afforded a particular opinion." *Dunn*, 607 F.App'x at 267 (internal citations omitted).

In this case, the ALJ assigned partial weight to Dr. Fligsten's opinion, articulating his reasoning as follows:

> On December 2, 2014, [Plaintiff] underwent a psychiatric consultative examination conducted by Kenneth Fligsten, M.D. At this evaluation, [Plaintiff] endorsed symptoms including depression, anger, trouble sleeping, feelings of worthlessness, and problems consistently completing tasks. Upon examination, Dr. Fligsten found that [Plaintiff] made poor eye contact and appeared depressed, but was polite, denied paranoia, and had intact memory, good working intelligence, and better-than-average intelligence.
>
> . . . .
>
> I give partial weight to the opinion provided by Dr. Fligsten, the psychiatric consultative examiner, who opined that [Plaintiff]'s ability to sustain concentration, complete tasks, relate socially, and function healthily independently would be impaired, and he would be susceptible to decompensation under stress. Although this opinion is of limited probative value as it is vague and provides no specific limitations, I have accounted for this opinion in limiting [Plaintiff] to low-stress, unskilled work with limited interpersonal interaction and no teamwork.

ECF No. 10 at 32–33 (internal record citations omitted). Here, while the ALJ assigned "great weight" to the opinions of the State agency psychological consultants who never examined or

13

treated Plaintiff, she did so because their opinions that Plaintiff "was capable of engaging in simple, repetitive activities on a sustained basis" were supported by the medical evidence as a whole. *Id.* at 33; *see also id.* at 29 ("Although [the State agency psychological consultants] are non-treating, non-examining medical sources, their opinions are based upon a thorough review of the available medical record and a comprehensive understanding of agency rules and regulations. I find these opinions are internally consistent and well supported by a reasonable explanation and the available evidence."). Moreover, the ALJ assigned Dr. Fligsten's opinion "partial weight," not "no weight," because Dr. Fligsten's opinions were vague and did not specify specific limitations. *Id.*; *see Chavis v. Berryhill*, No. ADC-17-1123, 2018 WL 1033267, at *12–13 (D.Md. Feb. 22, 2018) (finding that the ALJ properly assigned "some weight" to the opinions of a consultative examiner where those opinions were vague and did not specify the meaning of "some difficulty"). Further, the ALJ relied upon the treatment notes from Plaintiff's medical appointments and Plaintiff's reports of her daily activities in determining the RFC assessment, which are consistent with the opinions of Dr. Fligsten and the two State agency consultants. ECF No. 10 at 30–34. Accordingly, the ALJ did not err in weighing Dr. Fligsten's opinions.

### C. Substantial Evidence Supports The ALJ's Determination That Plaintiff Demonstrated Improvement.

Plaintiff next argues that the ALJ "play[ed] doctor" when she determined that his mental condition had improved and that there was no medical basis for her finding. ECF No. 13-1 at 12. Contrary to Plaintiff's contention, the ALJ noted that mental health treatment records showed improvement from medication and largely normal evaluations once regular medication was established, stating:

> With regard to [Plaintiff]'s alleged mental impairments, [Plaintiff]'s record contains a history of treatment for bipolar disorder and PTSD. Accordingly, [Plaintiff] is limited to the

reduced range of low-stress, unskilled work with limited interpersonal interactions, as set forth above. However, when considering [Plaintiff]'s improvement and stability with treatment, particularly when not facing legal, financial, or familial stressors, I find that the record does not support any greater limitations.

For instance, at a July 23, 2014 appointment with Christina Schiavone, LCSW-C, at Robert Pascal Youth and Family Services (Robert Pascal), Ms. Schiavone noted that [Plaintiff] appeared under the influence and tested positive for cocaine, but a mental status examination was otherwise normal, including that [Plaintiff] had a normal mood and affect, with normal cognition. However, at a follow-up on September 30, 2014, [Plaintiff] reported improved symptoms with medication compliance, and a mental status examination noted [Plaintiff] was calm, friendly, and relaxed, with appropriate thought content, and a full, appropriate, and congruent affect.

. . . .

At a follow-up with Ms. Schiavone on January 22, 2015, [Plaintiff] reported some difficulty sleeping, but denied any psychological problems or symptoms, and reported his behavior was stable and uneventful. At a visit on March 12, 2015, [Plaintiff] "denied all psychiatric problems." Treatment records from March 31, 2015 noted reports of increased stress and symptoms due to worry about being incarcerated, though records from April 14, 2015 noted his anxiety had improved and his mood swings were less frequent and intense.

Follow-up records from July 7, 2015 noted [Plaintiff] had been "stressed out over legal stuff," and he reported he had been without medication for the past few days. Treatment records from October 12, 2015 noted [Plaintiff] was "highly anxious," but he reported being without medications for several days and further stated that his medications were helping when he took them. In fact, at an October 26, 2015 appointment with Tiffany Sands, NP, he reported "things have been stable" and he found his medications to be effective, and records from November 17, 2015 noted stability and well-maintained symptoms on medication.

More recently, at an appointment on May 11, 2016, [Plaintiff] appeared calm and friendly, but was frustrated and anxious over his disability payments not being paid. However, at a visit on May 25, 2016, [Plaintiff] reported improvement with financial pressures removed, and he reported improved sleep and level mood. A

15

mental status examination from this visit noted signs of anxiety, but [Plaintiff] was calm, friendly, and attentive, his mood was normal without signs of either depression or mood elevation, there were no signs of hyperactivity, attention difficulties, or behavioral abnormalities, and no signs of hallucinations, delusions, or bizarre behavior. Records from June 22, 2016 noted the same, and [Plaintiff] reported he had recently taken a bus trip with friends and family to a crab house and the casino. At an appointment on August 3, 2016, [Plaintiff] reported feeling depressed and anxious after visiting Texas for his brother's wedding, but a mental status examination noted that though [Plaintiff] was depressed and appeared anxious, his affect was appropriate, his associations were logical and intact, his insight and judgment was fair, and he was cooperative and attention [sic] with no signs of of [sic] hyperactivity, attention difficulties, or behavioral abnormalities.

. . . .

. . . Ms. Schiavone opined that [Plaintiff] "has been unable to work for some time." I note that this opinion is not only vague and of minimal probative value, as it provides no specific functional limitations, but it is also inconsistent with Ms. Schivone's [sic] own treatment notes, which, as discussed above, show [Plaintiff]'s improvement and stability when compliant on medication and in the absence of external financial and legal stressors.

ECF No. 10 at 31–34 (internal record citations omitted). Plaintiff's argument concerns the ALJ's weighing of the evidence concerning whether his condition improved with medication, but this Court "may not reweigh th[e] evidence, and [the Court] must defer to the ALJ's determination when, as here, conflicting evidence might lead reasonable minds to disagree whether [Plaintiff] was disabled." *Sharp v. Colvin*, 660 F.App'x 251, 258 (4th Cir. 2016). Where, as here, an ALJ determines that a claimant's condition improved with medication based on evidence in the record, the ALJ performed a proper evaluation. *See Tilley v. Colvin*, No. TMD 14-3266, 2016 WL 775420, at *12 (D.Md. Feb. 29, 2016) (noting that "symptoms that can be reasonably controlled by medication or treatment are not disabling" (citing *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986))). Thus, in light of the ALJ's extensive discussion of and citation to the

16

evidence of record, the ALJ provided substantial evidence to support her conclusion that Plaintiff's mental impairments had improved.

### CONCLUSION

In summation, the Court finds that the ALJ improperly found that Plaintiff was "not disabled" within the meaning of the Act from July 8, 2014 through the date of the ALJ's decision. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED IN PART due to inadequate analysis. Therefore, based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 13) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 16) is DENIED, and the decision of the SSA is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Date: 16 August 2018

A. David Copperthite
United States Magistrate Judge